UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Jan Ellis-Clements,

Plaintiff,

v. Civil Action No. 2:10-CV-230

Commissioner of Social Security,

Defendant.

**OPINION AND ORDER**
(Docs. 7, 9)

Plaintiff Jan Ellis-Clements brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision (Doc. 7), and the Commissioner's motion to affirm (Doc. 9).

For the reasons stated below, Plaintiff's motion is granted, and the Commissioner's is denied. Pursuant to Local Rule 7(a)(6), and no party having made a request for oral argument, the Court finds that oral argument is not required.

**Background**

Plaintiff was born on January 11, 1961, and thus was forty-seven years old on the alleged disability onset date of July 1, 2008. (AR 113, 579.) She has a master's degree in special education, and has worked as a special education teacher for over twenty years. (AR 25-26, 150-51, 156.) In the summer of 2008, Plaintiff started her own consulting

business, providing special education services to various schools. (AR 26-28, 579, 632.) She worked part-time and charged $42 per hour. (*Id.*) In February 2006 and February 2009, respectively, Plaintiff was involved in automobile accidents, resulting in injuries to her right ankle, knee, and hip. (AR 26, 30-31, 574.) Since the accidents, Plaintiff alleges that she suffers from "a great deal of pain . . . in [her] right leg." (AR 166.)

On July 12, 2007, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (AR 111-22, 145-58.) In her DIB application, she alleged that, starting on February 21, 2006, she became unable to work as a result of the loss of use of her right leg following the February 2006 automobile accident referenced above. (AR 149-50.) Later, Plaintiff amended her claim to allege a disability onset date of July 1, 2008. (AR 579.) Plaintiff's DIB and SSI applications were denied initially and on reconsideration. (AR 43-52.)

On March 24, 2010, Administrative Law Judge ("ALJ") Paul Martin conducted a hearing on Plaintiff's DIB application. (AR 19-36.) Plaintiff appeared and testified at the hearing, and was represented by counsel. (*Id.*) On May 28, 2010, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 10-14.) Thereafter, having received additional evidence, the Decision Review Board ("DRB") selected the ALJ's decision for review; and on August 31, 2010, issued a decision affirming the ALJ's decision. (AR 1-5.) Having exhausted her administrative remedies, Plaintiff filed the Complaint in this case on October 1, 2010. (*See* Doc. 1.)

**ALJ Determination**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step commands that the ALJ determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual

functional capacity").

Finding that Plaintiff had engaged in SGA "at all times since her alleged onset date of disability," ALJ Martin did not proceed past the first step of the five-step sequential analysis. (AR 12-13.) The ALJ noted that Plaintiff was working twenty hours per week and charging $42 per hour for her educational consulting services. (AR 13.) He further noted that Plaintiff's "duties" included working with computers, supervising employees at a tutoring center, assessing and monitoring the progress of students, typing student reports, and doing educational consults via telephone. (*Id.*) The ALJ found that Plaintiff's earnings for the years 2008 and 2009, respectively, were $42,495.54 and $20,436.69; and noted that "the value of [Plaintiff's] work may have actually exceeded the amount charged." (*Id.*)

After the ALJ issued his decision, Plaintiff submitted additional evidence in the form of correspondence attaching tax and other financial documents. (*See* AR 6, 578-637.) The DRB did not accept this "new evidence," on the grounds that the documents "do not show a reasonable probability that the outcome of the decision would change." (AR 1.) Moreover, the DRB affirmed the ALJ's decision, concluding that, under the second and third tests set forth in 20 C.F.R. § 404.1575(a)(2), Plaintiff had engaged in SGA. (AR 2.)

**<u>Standard of Review</u>**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is

intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

**Analysis**

Plaintiff contends the Commissioner erred in determining that she engaged in SGA during the alleged disability period, and that if the Commissioner had properly evaluated her self-employment income and proceeded through the five-step sequential evaluation process, she would have been found disabled. In response, the Commissioner asserts that the DRB's application of the law was proper, and that any potential deviation from the applicable law was harmless given that the evidence demonstrates Plaintiff engaged in substantial gainful activity during the relevant period.

As noted above, the first step of the Commissioner's five-step sequential process to evaluate disability claims requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If the claimant is working and is doing SGA, he or she will be found not disabled regardless of her medical condition or her age, education, or work experience. *Id.* Because the Commissioner determined that Plaintiff was not disabled based on the first step of the five-step sequential process, the sole issue presented to the Court is whether Plaintiff engaged in SGA.

"Substantial gainful activity" is "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity" is defined as: "work activity

that involves doing significant physical or mental activities," regardless of whether it is done on a part-time basis. 20 C.F.R. § 404.1572(a). "Gainful work activity" is: "work activity that [the claimant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). The regulations specifically state that the claimant's income alone will not be considered in determining whether he or she engaged in SGA, "because the amount of income [the claimant] actually receive[s] may depend on a number of different factors . . . ." 20 C.F.R. § 404.1575(a)(2); *see* SSR 83-34, 1983 WL 31256, at *1 (1983) ("Self-employment income alone is not a reliable factor in determining SGA, since it is influenced not only by the individual's services but also by such things as market conditions, capital investments, the services of other people, and agreements on distribution of profits.").[1]

The regulations provide specific guidelines for the evaluation of activities performed by self-employed individuals such as Plaintiff. *See* 20 C.F.R. § 404.1575(a)(2). Specifically, the Commissioner determines whether a self-employed claimant has engaged in SGA by applying three tests:

> (i) Test [O]ne: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. . . .
>
> (ii) Test Two: You have engaged in substantial gainful activity if your work

[1] In *Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir. 1990), the Eighth Circuit held that "there can be no dispute that SSR[s are] binding on the Secretary. The Secretary's failure to consider its own ruling[s] constitutes a plain abuse of discretion." (Footnote and citation omitted.) Likewise, the D.C. Circuit has bluntly stated that "an agency's failure to follow its own regulations is fatal to the deviant action." *Union of Concerned Scientists v. Atomic Energy Comm'n*, 499 F.2d 1069, 1082 (D.C. Cir. 1974).

> activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>
> (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2). If a claimant has not engaged in substantial gainful activity under Test One, then the Commissioner must consider whether he or she has engaged in substantial gainful activity under Tests Two and Three. *Id.*

Here, the ALJ neither mentioned nor explicitly applied any of the three tests in his decision. Nonetheless, he concluded that, "[t]hroughout the period at issue, [Plaintiff's] work activity has involved significant physical and mental activities which have been performed for pay[, and therefore] . . . [Plaintiff's] earnings since July 1, 2008 have consistently represented substantial gainful activity." (AR 13.) The DRB corrected the ALJ's failure to apply the relevant law, and applied Tests Two and Three to determine that Plaintiff had engaged in SGA. (AR 2.) Still, the DRB erred in its application of these Tests, and inexplicably failed to apply Test One. These errors require remand, as explained below.

## I. DRB's Application of Test Two

As noted above, in determining whether a claimant has engaged in SGA, Test Two requires the Commissioner to consider whether the claimant's "hours, skills, energy output, efficiency, duties, and responsibilities" are comparable to that of unimpaired

individuals in the claimant's community who are in the same or similar businesses as their means of livelihood. 20 C.F.R. § 404.1575(a)(2)(ii). The Social Security Administration directs that a lack of conclusive evidence as to the comparability of the required factors results in a finding that the work performed is not SGA. SSR 83-34, at *9. Applied here, the DRB's findings with respect to Test Two are limited to the following statement: "Per your own admission, *your earnings of $42.00 per hour* are comparable to the earnings of unimpaired individuals in the same business." (AR 2 (emphasis added).) This analysis is insufficient. *See Schlosser v. Astrue*, 546 F. Supp. 2d 664, 669 (E.D. Mo. 2007) (finding ALJ's application of Test Two inadequate, where ALJ "described plaintiff's activities and concluded that they were comparable to that of an unimpaired individual without a specific evidentiary basis"). The DRB considered merely Plaintiff's hourly earnings, and failed to compare Plaintiff's "hours, skills, energy output, efficiency, duties, and responsibilities" to those of unimpaired individuals in her community. 20 C.F.R. § 404.1575(a)(2) (ii).

Moreover, the DRB neglected to mention that, although Plaintiff submitted a letter dated June 7, 2010 to the DRB which stated that her earnings of $42 per hour are in the "middle range of the fees being charged for the same services in the area" (AR 632); at the administrative hearing, Plaintiff testified that she is "not getting the same level of pay" as other people in Vermont who are doing the same kind of work (AR 29). The DRB at least should have noted this contrary testimony; it is unclear if the DRB was even aware of it. It is also unclear if the DRB was aware of Plaintiff's testimony at the administrative hearing that, because of her alleged disabilities, (a) she "ha[s] to have

someone else check everything [she] do[es] . . ., and that's not something that would normally happen with other people"; and (b) she is "limited in [her] typing," and thus requires that a friend be present for her to dictate her reports to them, which is also "not something that other people would have to do." (AR 30.) Despite the relevance of this testimony with respect to the DRB's application of Test Two, the DRB appears not to have considered it. The ALJ considered at least some of the testimony but cursorily dismissed it, stating, "While [Plaintiff] testified she receives assistance with editing her work, she was the sole proprietor of the business." (AR 13.)

Relying exclusively on Plaintiff's statement in a June 2010 letter to the DRB that her $42 per hour charge was the average hourly rate for services rendered in her area (AR 632), the Commissioner argues that Plaintiff would not have been able to charge this rate "unless her work was comparable to that of unimpaired individuals in her community who are engaged in a similar business in terms of 'hours, skills, energy output, efficiency, duties, and responsibilities'" (Doc. 9 at 5). The Commissioner further argues that, although Plaintiff distinguished the work she performed from that performed by her unimpaired colleagues on the basis that she had to have her work reviewed for errors and would need assistance typing reports, in light of the hourly rate charged, "these minor differences" do not diminish the DRB's finding that her work was comparable to that of other unimpaired individuals performing similar work in the community. (*Id.*) The Commissioner cites no law to support these arguments. This is despite the following strict admonition contained in an applicable Social Security Ruling:

> *Each work factor cited [in Tests Two and Three] must be described in detail, showing its contribution to the business operation.* General descriptions are considered inconclusive evidence for the point-by-point comparison that is required. If only a general description is possible or available, any doubt as to the comparability of the factors should be resolved in favor of the impaired individual.
>
> *Evidence of the impaired individual's activities accompanied by a statement that the work is comparable to the work of unimpaired persons is insufficient for a sound decision. If necessary, a description should be obtained through a personal interview with an unimpaired self-employed individual from the selected group.* It may be necessary to have a more comprehensive description of the impaired individual's activity than that which can be provided by the impaired person. Contact, therefore, should be made with people having firsthand knowledge of the impaired individual's work situation obtained through actual participation or observation.

SSR 83-34, at *9-10; *see Downes v. Barnhart*, 289 F. Supp. 2d 1072, 1074-75 (S.D. Iowa 2003) (case remanded to ALJ, where court could find "no evidence in th[e] record which passes muster on the . . . standard [set forth in SSR 83-34]" to support ALJ's finding that claimant was "performing work activity comparable to the salary that an owner would pay an employee to do the same work"); *Gyore v. Astrue*, No. CV-07-13-PHX-DGC, 2008 WL 490623, at *2 (D. Ariz. Feb. 20, 2008) ("Because the ALJ provided only a bare conclusion that Plaintiff's activities constitute comparable worth, and failed to engage in the detailed analysis required by SSR 83-34, the ALJ erred.").

In applying Test Two, both the ALJ and the DRB failed to determine what a comparable person with Plaintiff's job would do. In fact, the DRB did not even describe Plaintiff's job activities, and instead summarily concluded without a specific evidentiary basis (other than Plaintiff's "own admission") that Plaintiff's earnings were comparable to that of unimpaired individuals in the same business. (AR 2.) This type of unspecific

and unsupported analysis is exactly what SSR 83-34 proscribes. *Schlosser v. Astrue*, 546 F. Supp. 2d at 669.

## II. DRB's Application of Test Three

As stated above, Test Three requires the Commissioner to consider whether the claimant's work activity is "clearly worth the amount shown in 20 C.F.R. § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work that the claimant is doing." 20 C.F.R. § 404.1575(a)(2)(iii). The DRB's findings with respect to this test were limited to the following statement: "[Y]our earnings of $42.00 per hour represent a value to the business and *seem to be* more than what an employer would pay. Accordingly, the [DRB] finds that the value of your activities is 'clearly worth the amount shown in 20 CFR §§ 404.1574(b)(2) and 416.974(b)(2).'" (AR 2 (emphasis added).) Again, this analysis is insufficient. *See, e.g., Gewecke v. Astrue*, No. 4:09CV3137, 2010 WL 2545560, at *4 (D. Neb. June 18, 2010) (finding ALJ's application of Test Three inadequate because "[n]o data ha[d] been developed or documented evidencing the value of plaintiff's services," and "[t]he only evidence relied upon by the ALJ [wa]s [an independent farm manager's] responses to the questions posed by the ALJ"). Specifically, the DRB never assigned a value to Plaintiff's work activity "in terms of its value to the business." 20 C.F.R. § 404.1575(a)(2) (iii). Moreover, it is not enough for the DRB to find merely that a claimant's hourly earnings "seem to be" more than what an employer would pay. (AR 2.) Rather, SSR 83-34, at *10 provides as follows:

> [T]he degree to which evidence of comparability or worth of services should contain data supplied by outside authorities (e.g., county agents, etc.) will depend on the factual situation. In many instances, familiarity with local conditions will make it unnecessary to document the file in great detail. . . . On the other hand, *where there is any doubt as to the comparability or worth of services, it will be necessary to obtain evidence in appropriate detail, supplemented as required by opinions from authoritative sources in the community.*

(Emphasis added.)

There does not appear to be sufficient evidence in the record to determine whether Plaintiff was engaged in SGA under either Test Two or Test Three. Therefore, the Court must remand this matter to the ALJ to further develop the evidence regarding (a) whether Plaintiff's activity, in terms of her "hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in [her] community who are in the same or similar businesses as their means of livelihood," 20 C.F.R. § 404.1575(a)(2)(ii); and (b) whether Plaintiff's activity "is clearly worth the amount shown in [20 C.F.R.] § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work [she is] doing," 20 C.F.R. § 404.1575(a)(2)(iii).[2] *See Brown v. Astrue*, No. 3-07-CV-1095-N, 2008 WL 5232797, at *4 (N.D. Tex. Dec. 12, 2008) (where ALJ "failed to make findings required for the correct application of section 404.1575," matter must be remanded); *Schlosser v. Astrue*, 546 F. Supp. 2d at 669; *Gaudreau v. Comm'r of Soc. Sec.*, 160 F. Supp. 2d 285, 293-94 (D. Conn. 2001).

---

[2] This assumes that, on remand, the ALJ does not determine that Plaintiff engaged in SGA based on a proper application of Test One, discussed *infra*.

## III. DRB's Failure to Apply Test One

Finally, as discussed above, Test One requires that the Commissioner consider whether the Plaintiff "render[s] services that are significant to the operation of [his or her] business and receive[s] a substantial income from the business." 20 C.F.R. § 404.1575(a)(2)(i). Therefore, this test is two-part, and requires that the individual render significant services and receive substantial income. In a one-person business operation such as Plaintiff's, any services are considered "significant." 20 C.F.R. § 404.1575(b)(1); SSR 83-34, at *2. Whether income is "substantial" is determined by deducting "normal business expenses" and other allowable deductions from gross income to determine net income. 20 C.F.R. § 404.1575(c). Income is considered "substantial" if it meets the requirements of "countable income" in 20 C.F.R. § 404.1575(c), or if it "is either comparable to what it was before [the claimant] became seriously impaired if [the agency] had not considered [the claimant's] earnings or is comparable to that of unimpaired self-employed persons in [the claimant's] community who are in the same or a similar business as their means of livelihood," 20 C.F.R. § 404.1575(c)(2)(ii). A self-employed claimant who operates a business entirely by herself, like Plaintiff here, will not be considered disabled if her "countable income" meets or exceeds the Social Security Administration earnings guidelines. 20 C.F.R. § 404.1575(a)(2)(i). Under these guidelines, income is "substantial" if it averages more per month than $940 for the year 2008 and $980 for the year 2009. Program Operations Manual System ("POMS") DI 10501.015 (effective Oct. 19, 2010).

Neither the ALJ nor the DRB made any specific findings as to whether Plaintiff received a "substantial income" from her business. Instead, as noted above, the DRB focused merely on Plaintiff's earnings of $42 per hour. No attempt was made by the DRB to determine whether Plaintiff's income met the requirements of "countable income" set forth in 20 C.F.R. § 404.1575(c)(2), was comparable to the income Plaintiff received before becoming disabled, or was comparable to the income of unimpaired self-employed individuals engaged in the same or similar businesses. In fact, although the ALJ noted that Plaintiff worked sixteen hours per week for approximately the second half of 2008 and the first two months of 2009 and was working twenty hours per week on the date of the ALJ's decision (AR 13), the DRB did not even discuss how many hours per week Plaintiff worked. Without these predicate findings, the Court is unable to determine whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff received a "substantial income" from her business. *Brown v. Astrue*, 2008 WL 5232797, at *4; *see also Brown v. Astrue*, No. 09-1331-SAC, 2010 WL 5137542, at *6 (D. Kan. Dec. 10, 2010) (finding that ALJ's failure to make findings on any of the three tests and failure to indicate that he was applying test one constituted error as a matter of law and required remand); *Gaudreau v. Comm'r of Soc. Sec.*, 160 F. Supp. 2d at 293-94 (finding that ALJ's failure to make findings under any of the three tests, and failure to determine whether plaintiff provided "significant services" or received a "substantial income" from the business constituted error as a matter of law and required remand). On remand, the ALJ is directed to make findings under section 404.1575, and specifically to determine whether Plaintiff received a "substantial income from the

business." 20 C.F.R. § 404.1575(a)(1), (b), (c).

The Commissioner concedes that the ALJ and DRB inexplicably failed to apply Test One in determining whether Plaintiff engaged in SGA. The Commissioner states: "[I]t is unclear why the DRB did not find that Ms. Ellis-Clements had engaged in SGA based on the first test outlined in the regulations." (Doc. 9 at 6.) The Commissioner then proceeds to argue that, under Test One, Plaintiff clearly engaged in SGA because "the record shows that her countable income for 2009 . . . is considered substantial income." (*Id.*) But the ALJ and DRB's failure to apply Test One is more than a mere technical error which may be cursorily overlooked by the Court. First, it is unclear whether the ALJ or DRB is even permitted to omit analysis under Test One and progress immediately to analysis under Tests Two and Three. As noted by the District of Delaware, "there is little case law on whether the ALJ can skip Test One and find that plaintiff did engage in substantial gainful activity under Tests Two or Three." *Schlosser v. Astrue*, 546 F. Supp. 2d at 669 n.7 (citing *Hobson v. Apfel*, No. Civ.A. 00-346-JJF, 2001 WL 34368379, at *6 (D. Del. Feb. 28, 2001)). Second, if anything, the DRB's decision to analyze Plaintiff's claim solely under Tests Two and Three implies a finding that Plaintiff did not engage in SGA under Test One, given that the second and third tests are generally applied only where analysis under the first test "clearly establishe[s] that the self-employed person is not engaging in SGA on the basis of significant services and substantial income." SSR 83-34, at *9; *see Camper v. Sullivan*, No. C-88-0721 FMS, 1991 WL 352422, at *2 (N.D. Cal. Nov. 6, 1991) ("tests two and three need not be considered if test one establishes SGA").

Third, the Court cannot affirm the DRB's decision based solely on the Commissioner's *post hoc* application of Test One despite the failure of both the ALJ and the DRB to apply this test. *See Varney v. Astrue*, No. 09–3105–KI, 2011 WL 1527362, at *5 (D. Or. Apr. 20, 2011) ("I cannot accept the Commissioner's invitation to infer from the ALJ's decision that he made the relevant findings for purposes of Test One."). It is well-settled in the Second Circuit that a reviewing court "'may not accept appellate counsel's *post hoc* rationalizations for agency action.'" *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (quoting *Burlington Truck Lines, Inc. v. U.S.*, 371 U.S. 156, 168 (1962)); *Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009). Moreover, the Court is unable to "glean the rationale" from the ALJ or DRB's decision, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983), with respect to application of Test One, given that neither decision even mentions "Test One" or any of the key terms contained therein, including "significant services," "substantial income," or "countable income," 20 C.F.R. § 404.1575(a)(2)(i), (b), (c). In fact, as emphasized above, the DRB does not even mention Plaintiff's yearly, monthly, or weekly income, instead focusing exclusively on her hourly earnings without discussing how many hours she worked during the relevant period.

Furthermore, the Commissioner's *post hoc* "countable income" argument relies on figures contained in the tax returns submitted by Plaintiff to the Commissioner in May through July of 2010. (*See* Doc. 9 at 6 (citing AR 580, 582, 587-88, 593).) Ironically, the DRB explicitly "did not accept" and did not evaluate or rely on this evidence in its decision, stating merely that the documents "do not show a reasonable probability that the outcome of the decision would change." (AR 1; *see also* AR 6 (referencing AR 578-

637).) The Court cannot now accept the Commissioner's argument that these very same documents – which the DRB unequivocally found had no effect on its decision regarding whether Plaintiff's earnings amount to SGA – should be relied on by this Court to affirm the DRB's decision.

**Conclusion**

In sum, the Commissioner did not properly base his decision on any of the three applicable tests outlined in the regulations. His failure to make proper findings under at least one of these tests constitutes error as a matter of law and requires this Court to remand for a correct analysis under 20 C.F.R. § 404.1575. Accordingly, Plaintiff's motion (Doc. 7) is GRANTED; the Commissioner's motion (Doc. 9) is DENIED; and the matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this ruling. On remand, in determining Plaintiff's "countable income" under Test One, the ALJ is instructed to consider the tax and other financial documents submitted by Plaintiff in May through July of 2010. If, after evaluating Plaintiff's work activity under one or all of the three applicable tests, the ALJ determines that Plaintiff has not engaged in SGA during the alleged disability period, the ALJ shall continue with the five-step disability analysis described in 20 C.F.R. § 404.1520.

Dated at Burlington, in the District of Vermont, this 18th day of July, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge